## TEXAS & NEW ORLEANS RAILROAD COMPANY v. SAMUEL HAYNES ET AL.

### Decided November 21, 1906.

**1.—Conclusions of Law and Fact—Objection.**

One who fails to object in the trial court to the manner and form of preparing his conclusions of law and fact by the trial judge will not be heard to make such objection in the Appellate Court.

**2.—Misnomer—Identity of Persons—Pleading.**

The proper corporate name of the plaintiff was the Texas and New Orleans Railroad Company. A written acknowledgment of tenancy was taken in favor of the Texas and New Orleans Railway Company. The person taking such acknowledgment of tenancy was the land agent of the plaintiff, and was representing said road at the time, and delivered said instrument to the plaintiff's attorneys. Held, the question was one of identity merely, and could be met by proof at the trial without special pleading of misnomer.

**3.—Owner—Limitation—Adverse Possession.**

Where the true owner of land is in actual possession of a portion of the same the adverse possession of another, for the purposes of limitation, will be confined to such land only as he has in actual and exclusive possession.

**4.—Adverse Possession—Mistaken Belief as to Owner.**

The adverse possession of land by one who is under the mistaken belief that it is part of the public domain will support limitation against the true owner.

Appeal from the District Court of Jasper County. Tried below before Hon. W. B. Powell.

*Cobbs & Hildebrand,* for appellant.—(a) Possession of part under deed is possession of all not in actual occupancy of trespasser. Claborne v. Elkins, 79 Texas, 380; Williams v. Rand, 9 Texas Civ. App., 637; Heironimus v. Duncan, 11 Texas Civ. App., 615; Freedman v. Bonner, 40 S. W. Rep., 49; Craig v. Cartwright, 65 Texas, 421; Pearson v. Boyd, 62 Texas, 541; Evitts v. Roth, 61 Texas, 81; Whitehead v. Foley, 28 Texas, 290; Beaumont Lumber Co. v. Ballard, 23 S. W. Rep., 920; Cantagrel v. Von Lupin, 58 Texas, 578; Whitaker v. Thayer, 12 Texas Ct. Rep., 655; Krauth v. Hahn, 65 S. W. Rep., 18.

(b) Payment of taxes not evidence of adverse possession: McDow v. Rabb, 56 Texas, 162; Fuller v. Jackson, 62 S. W. Rep., 274.

(c) Possession to be adverse must be open and exclusive for the full ten years of definite part: Richards v. Smith, 67 Texas, 612; Parker v. Baines, 65 Texas, 609; Peyton v. Barton, 53 Texas, 304; Bank of Va. v. Hedges, 38 Texas, 615; Rhodes v. Whitehead, 27 Texas, 312; Gillespie v. Jones, 26 Texas, 346; Wheeler v. Moody, 9 Texas, 377; Chance v. Branch, 58 Texas, 493.

(d) Evidence of possession insufficient to support ten years statute of limitation: Sparks v. Hall, 67 S. W. Rep., 916; Overand v. Menczer, 83 Texas, 128; Zepeda v. Hoffman, 6 Texas Ct. Rep., 819; Nolan v. Mundine, 9 Texas Ct. Rep., 336; Buster v. Warren, 10 Texas Ct. Rep., 99.

To hold 160 acres under our statute one must plead and prove one's boundaries. Giddins v. Fisher, 77 S. W. Rep., 209; Doom v. Taylor, 79 S. W. Rep., 1087; (Distinguished in) Parker v. Cameron & Co., 12 Texas Ct. Rep., 735.

(a) Judgment must be based on evidence: Galveston, H. & S. A. Ry. Co. v. Buckley, 1 App Civ., sec. 687; Easton v. Dudley, 78 Texas, 239.

(b) Possession of part under deed is possession of all not in actual occupancy of trespasser: Claiborne v. Elkins, 79 Texas, 380; Williams v. Rand, 9 Texas Civ. App., 637; Heironimus v. Duncan, 11 Texas Civ. App., 615; Freedman v. Bonner, 40 S. W. Rep., 49; Craig v. Cartwright, 65 Texas, 421; Pearson v. Boyd, 62 Texas, 541; Evitts v. Roth, 61 Texas, 81; Whitehead v. Foley, 28 Texas, 290; Beaumont Lumber Co. v. Ballard, 23 S. W. Rep., 920; Cantagrel v. Von Lupin, 58 Texas, 578.

Occupying land under the belief that it is vacant public domain with intention to obtain title from the State is not adverse to the true owner. Hartman v. Huntington, 32 S. W. Rep., 562; Mhoon v. Cain, 77 Texas, 316; Flewellen v. Randall, 7 Texas Ct. Rep., 310; Beall v. Evans, 20 S. W. Rep., 946; Texas W. Ry. Co. v. Wilson, 83 Texas, 157; Warren v. Frederichs, 83 Texas, 384; Blum Land Co. v. Rogers, 32 S. W. Rep., 713; Schleicher v. Gatlin, 85 Texas, 272. Contra: Price v. Eardley, 8 Texas Ct. Rep., 787, and cases cited in said opinion.

(a) Citation on "Railway Company" instead of "Railroad Company" is good: Galveston, H. & S. A. v. Donahoe, 56 Texas, 167; Central & M. Ry. Co. v. Morris, 68 Texas, 56; Ballard v. Carmichael, 83 Texas, 368.

(b) "Railway" and "Railroad" are synonymous: Houston & T. C. v. Weaver, 41 S. W. Rep., 847.

(c) To constitute a fatal variance misdescription must be such as to mislead the adverse party and is immaterial unless it does mislead adverse party: Texas & N. O. v. Barber, 71 S. W. Rep., 393; Longley v. Carruthers, 64 Texas, 288; McClelland v. Smith, 3 Texas, 213; Seay v. Hunt, 55 Texas, 545; Galveston Co. v. Galveston, 56 Texas, 486; Smith v. Shinn, 58 Texas, 1; Weibusch v. Taylor, 64 Texas, 56; First Nat. Bank of Rockwall v. Stephenson, 82 Texas, 436; Taylor v. Merill, 64 Texas, 497.

The conclusions of law and fact of the court should not be considered as they are not separate and distinct from each other as required by the rules of the courts of Texas. Wells v. Yarborough, 84 Texas, 663; Ikard v. Thompson, 81 Texas, 293; Andrews v. Key, 77 Texas, 39; Callaghan v. Grenet, 66 Texas, 240.

No briefs for appellee.

JAMES, Chief Justice.—Appellant sued in trespass to try title for section 9 patented to the T. & N. O. R. R. Co. and for certain damages, the defendants being Samuel Haynes, C. E. Slade, J. A. Ratcliff and H. N. Ratcliff. Judgment was in favor of plaintiff against all defendants except H. N. Ratcliff who had disclaimed as to all the survey except the N. W. ¼ thereof. As to this particular quarter the judgment was for him upon the ground of the ten years statute. From this plaintiff has appealed.

The judge filed his conclusions of law and fact. One of the assignments of error is that these conclusions are not separate and distinct from each other, so that no one can ascertain from them what are conclusions of law and what are conclusions of fact. Appellant joined in the request for the filing of conclusions and made no objection to their form in that court. Appellant was apparently then satisfied with their form, and ought not to be heard here on this technical objection. But there is no mistaking from them what the judge's findings were, both as to the facts and as to the law.

As to the quarter of the section awarded to H. N. Ratcliff (which is the only part of the judgment properly before us for revision, no appeal being prosecuted by the other defendants, and appellant not having any ground to appeal from the rest of the judgment) the findings were in substance as follows:

"That H. N. Ratcliff had resided on the N. W. quarter of the section for more than ten years after plaintiff's cause of action accrued and before the filing of this suit openly using, cultivating and enjoying the same, claiming the same adversely and having continuous and peaceable possession thereof, and that having made out a case entitling him to the 160 acres claimed by him under his plea of ten years limitation, I find in his favor.

"That the other defendants, J. A. Ratcliff and Samuel Haynes gave written acknowledgment of tenancy to 'The Texas & New Orleans Railway Company.' These acknowledgments of tenancy were undisputed, and were dated May 11, 1897, and were in like form, one executed by J. A. Ratcliff and the other by Samuel Haynes. We here copy one:

"State of Texas, ⎫
County of Jasper.⎰

I, J. A. Ratcliff of Jasper County, Texas, do hereby acknowledge that the Texas and New Orleans Railway Company is the owner of section number nine (9) as shown by the map of Jasper County, lying about 2½ miles nearly northwest of the southeast corner of Jasper County, Texas, on which section number 9 said Ratcliff has about five acres in cultivation and a dwelling house and other improvements, now occupied by said Ratcliff, which he holds as a tenant of said railway company, and said Ratcliff hereby agrees to surrender possession of said land and premises upon ten (10) days notice from said railway company, or its assigns.

Witness my hand this the 11th day of May, 1897, in the presence of following witness:

(Signed) J. A. Ratcliff.

Witness:

L. D. Scarborough,
H. M. Smith,
V. J. Withers,
E. H. Carter."

The findings show that J. A. Ratcliff was upon the S. E. quarter, and Samuel Haynes upon the N. E. quarter of the section.

The court further found that there was no pleading nor testimony to show that the Texas and New Orleans Railroad Company (which was plaintiff's corporate title) and the Texas & New Orleans Railway Company (the name mentioned in the acknowledgments of tenancy), are the same person or corporation, and that the names are not *idem sonans,* but that E. H. Carter who took the acknowledgment of tenancy was the land agent of the Texas & New Orleans Railroad Company, and was representing said road at the time, and that the instrument (instruments) were delivered by Carter to plaintiff's attorneys.

The court further states as a conclusion that the acknowledgments given to a third party with whom the plaintiff does not connect title, estopped the parties making them (J. A. Ratcliff and Samuel Haynes) from claiming title as against or holding adversely to the true owner, and upon that ground alone rendered judgment against the defendants last mentioned.

If the trial judge was right in the conclusion that the acknowledgments of tenancy of J. A. Ratcliff and Samuel Haynes were to a third person and not to the owner (plaintiff), then he was probably right in rendering judgment for H. N. Ratcliff. The reason of this would be that they would not, in that case, have been the tenants of plaintiff, and there would have been no such entry or possession of the owner, as would restrict H. N. Ratcliff's plea of limitations to the land he actually occupied. It is consistent with the court findings that this was the reason for the judgment in favor of Ratcliff, and we have to deal with the case upon that theory.

We think the question was one of identity merely, and was capable of being met by proof at the trial, without the necessity of special pleading of misnomer. J. M. Cobb v. Bettie Bryan, decision by this court,

not yet reported. We think also that the evidence stated by the court in the conclusion and other testimony, all of which was uncontradicted, admitted of no other finding than that the declarations of tenancy were to plaintiff.

It may be, however, that the court concluded that the actual possession of H. N. Ratcliff extended to the entire quarter section. If this was the fact, then the judgment was right notwithstanding plaintiff, the owner, was in possession of a part of the survey by its tenants. The testimony as to Ratcliff's possession was as follows:

H. N. Ratcliff testified: "I live on and own the N. W. ¼ of section 9. Have been there 14 years; went there in July, 1891; have a wife and seven children; have farmed on this land every year I have been there; have a dwelling house, barn, smoke-house, chicken-house, wood-shed, 24 acres in cultivation and 40 acres under fence on the place. I commenced to improve the place the first year I went there and have continued making improvements every year since. My possession of the property has been open, continuous, notorious and peaceable, and I have claimed to own the property all of the time. I have never leased from anyone, my family have always resided with me on the place. I have cultivated, used and enjoyed it every year and have never lived anywhere else since I went there. In 1891 I built a log house of two rooms and fenced and cultivated a small field. My house is about 340 varas from the west line of the section, my cultivated land and pasture is 200 varas east of my house. In my southwest corner there is about 13 acres in cultivation in one field. There is another field of 10 or 12 acres. The pasture is in another part of the land. I have always rendered the land for taxes at $1.00 per acre.

"The county surveyor put me there and told me it was public land and I went there for the purpose of preempting it. I complied with all the requirements, and in 1898 got a patent, but it was not for this land, it was a narrow strip containing about 40 acres west of this section. My improvements are about the center of the 160 acres claimed by me, the west line of the section is about 340 varas west of my house. I have never signed any lease and nobody has ever asked me to. My title has never been disputed, the plaintiff has never claimed my 160 acres."

W. G. Williams testified: "The field notes of H. N. Ratcliff's patent conflict with section 9 and overlap it on the west 379 varas. The east line of the land described in his patent is about 40 varas east of his house and he has not any land in cultivation east of said line nor has he cut any of the timber off same and all the land east of said land is wild uncultivated land."

The testimony of Samuel Haynes was that he had lived on the N. E. quarter of the section since 1893, that his house was about 100 yards from the north line, that he had about ten acres under fence near his house and four or five acres about the center of the quarter section, and that all the balance of the land is open vacant land and the cattle, horses, and hogs of his neighbors run at will over same.

J. A. Ratcliff who moved on the S. E. quarter of the section in 1892, testified that he had his house on the north part thereof and up to this time had enclosed about twenty acres, that the balance is wild timber

land unfenced and the stock, horses, cattle and hogs of his neighbors roam at large on said land.

That this condition must have existed with reference to the unfenced part of the N. W. quarter claimed by H. N. Ratcliff is evident.

We do not believe this evidence was sufficient to show that H. N. Ratcliff had such actual possession of the whole of the ¼ section, as would bar plaintiff, in view of the fact that plaintiff was the owner, and in possession of a portion of the survey. Outside of defendant's improvements and enclosures the land, amounting to the greater part thereof, appears to have been open and unused. Something more than this is necessary to prescribe under our statutes when actual adverse possession is essential. It is not necessary on this subject to do more than refer to Peden v. Crenshaw, 98 Texas, 370 where the subject is fully considered. Ratcliff undoubtedly had the requisite possession of parts of the quarter section, but we are unable from the record to identify them in order to be able to reform the judgment.

We do not wish to be understood as holding that it was necessary for Ratcliff to have had the whole of the quarter section under enclosure. A man might exercise rights of ownership over unenclosed land in such a manner as to have actual, notorious and exclusive possession thereof, but such is not the effect of the evidence here in reference to those portions of the quarter section which were outside of what he had improved or enclosed.

It is also a contention of appellant that inasmuch as Ratcliff, for a large part of the time, was there under the mistaken belief that the ¼ section was public land, he could not under such circumstances prescribe against the real owner. The case of Price v. Eardley, 34 Texas Civ. App., 60, in which case the Supreme Court denied a writ of error, is decisive against this contention.

We believe what is above stated covers all matters embraced in the assignments of error.

Insofar as the judgment relates to the N. W. quarter of the section, and as between plaintiff and H. N. Ratcliff, it will be reversed for another trial. In other respects the judgment of the District Court will not be disturbed.

*Reversed and remanded.*